## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAYMOND F. JUSTIS, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-4193 |
| | : | |
| DEPARTMENT OF AGRICULTURE, | : | |
| Defendant. | : | |

### MEMORANDUM

**SLOMSKY, J.**                                                    **JANUARY 7, 2025**

*Pro Se* Plaintiff Raymond F. Justis challenges a decision by the Merit System Protection Board ("MSPB") to affirm his removal from employment with the United States Department of Agriculture ("USDA"). In this "mixed case" appeal, Justis not only challenges the decision by the MSPB, but also raises discrimination claims, both in connection with his removal and based on conduct that occurred prior to his removal.[1] Justis's petition to review the MSPB's decision, which was filed in the United States Court of Appeals for the Federal Circuit, was transferred to this Court after the Federal Circuit determined that it lacked jurisdiction. Justis thereafter filed an Amended Complaint (ECF No. 15), which preserves the "mixed case" appeal status as it both challenges the MSPB's decision to affirm his removal and asserts claims under Title VII. Currently before the Court is the United States' Motion to Dismiss for Failure to State a Claim or, in the Alternative, for Summary Judgment. (ECF No. 19.) Justis filed a Response to the Motion (ECF No. 22), and the United States filed a Reply (ECF No. 23). For the following reasons, the

---

[1]   "When a federal employee suffers a qualifying adverse employment action that is appealable to the MSPB and attributes the agency's decision, in whole or part, to unlawful discrimination, the employee has what is known as a 'mixed case.'" *Crowe v. Wormuth*, 74 F.4th 1011, 1023 (9th Cir. 2023).

United States's Motion will be granted, Justis's Amended Complaint will be dismissed, and the MSPB's decision will be affirmed.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

Justis was employed with the USDA's Food Safety and Inspection Service ("FSIS") as a Federal Meat and Poultry Inspector.  (Am. Compl. at 12.)  He worked out of the Souderton, Pennsylvania office since December 2011.  (*Id*.)  Justis was on blood thinners for "cardiac artery disease."  (*Id*.)  On April 23, 2015, Justis filed an informal EEO complaint related to an incident with the USDA/FSIS Inspector Lillian Gutierrez that took place the prior day.  (*Id*. at 13, 19; *see also* CAR at 161, 488.)  Justis had been "inspecting hearts" and Gutierrez, who was standing next to him, did not provide him the required five feet of distance.  (Am. Compl. at 13.)  Justis asked Gutierrez to respect the distance rule, but she ignored his request.  (*Id*.)  When Justis reached to retrieve "the ink stamper to condemn a heart he just inspected, . . . Gutierrez intentionally put her knife in an upright position and nearly cut [Justis's] wrist."  (*Id*.)  When he asked Gutierrez why she did that and reminded her he is on blood thinners, "she just laughed."  (*Id*.)  Justis states that he called his supervisor, Dr. S. Rivera-Garcia, to help but Rivera-Garcia yelled and pointed in Justis's face.  (*Id*. at 14.)  Justis raised his voice at Dr. Rivera-Garcia and "instructed her to stop yelling at him."  (*Id*.)  Justis was reprimanded for his conduct.  (*Id*.)

The next day Justis filed an informal EEO complaint with the USDA's Equal Opportunity Commission.  (*Id*.)  The basis for the complaint was the USDA's (1) "failure to enforce their anti-

---

[2]    The factual allegations are taken both from the Amended Complaint (ECF No. 15) as well as the Certified Administrative Record ("CAR") before the MSPB (ECF No. 20). The Amended Complaint consists of the first few pages of a standard form complaint for employment discrimination claims, and other documents submitted either to the MSPB or the Federal Circuit in connection with his Petition for Review.  The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

bullying and harassment policies", and (2) "failure to provide [Justis] with a safe and hostile free work environment." (*Id.*) On June 23, 2015, Justis was issued a Notice of Right to File. (*Id.* at 19; *see also* CAR at 388.) Justis never filed a formal complaint. (Am. Compl. at 19; CAR at 422.)

On August 21, 2015, Justis was arrested by the FBI and placed in federal detention. (Am. Compl. at 15; CAR at 252, 426, 535.) He was charged with sex trafficking of a minor, in violation of 18 U.S.C. § 1591.[3] (CAR at 535.) After being detained, he attempted to call his direct supervisor, Dr. Holiat, but was unable to reach him, so left him a message, explaining "everything in full detail." (Am. Compl. at 15.) Justis did not allege in his Amended Complaint that he requested leave from his employer. On August 28, 2015, Justis's sister informed USDA Frontline Supervisor ("FLS") Thomas Urban that Justis had been detained without bail. (*Id.* at 28; CAR at 234.) Urban informed Justis's sister that Justis would be characterized as absent without leave ("AWOL"). (CAR at 234.)

On October 13, 2015, the District Manager of the USDA FSIS Philadelphia District Office requested disciplinary action against Justis based on his being AWOL for three consecutive pay periods. (CAR at 226.) The request references a January 5, 2015 warning issued to Justis for a "negative pattern" of using sick and annual leave, which included 105 hours of prior AWOL. (*Id.* at 226-27.) After not improving despite the warning, Justis was placed on leave restriction "due to his abuse of leave and his lack of improvement despite counseling." (*Id.* at 226, 228-231; *see also* Am. Compl. at 29-30.) As part of the leave restriction, annual leave had to be "pre-requested" and sick leave had to be "substantiated by a medical certification." (*Id.* at 229.) On August 20,

---

[3]  On March 31, 2016, Justis pleaded guilty to the criminal charges, and on October 21, 2016 he was sentenced to 168 months' imprisonment. (*Id.* at 429.) He is currently scheduled to be released from BOP confinement in July of 2027. *See* https://www.bop.gov/inmateloc/ (last accessed January 7, 2025).

2015, a day prior to being detained, Justis received a letter from his supervisor, Dr. Stephen Holiat, which documented his "failure to comply with the terms of leave restriction and his continued use of leave without approval." (*Id.* at 227; *see also* Am. Compl. at 35.)

On October 27, 2015, Justis was issued a notice of proposed removal. (CAR at 408-12; *see also* Am. Compl. at 23.) The notice contained two proposed charges: (1) "Conduct Prejudice to the Best Interest of the Service"; and (2) "Absence Without Leave (AWOL)." (CAR at 415.) Charge 2, provided:

> You have been absent from duty since August 21, 2015. You have not contacted your supervisors regarding your absence, and you have not requested or received authorization to be away from your duties and have been carried in an . . . AWOL status since August 21, 2015. As of October 17, 2015, you have accumulated 320 hours of AWOL for this incident.

(CAR at 409.) Despite the notice of proposed removal providing Justis with information about his right to reply orally or in writing, Justis did not respond to the notice. (*Id.* at 415.) In a December 22, 2015 "Decision on Proposed Removal," the USDA sustained both charges and advised Justis that he was removed from employment upon receipt of the decision, but no later than December 26, 2015. (*Id.* at 417.)

Justis appealed the USDA's removal decision to the MSPB on the basis that USDA improperly used his arrest and prosecution as the basis to remove him from his position. (CAR at 6-7, 12.) On September 12, 2016, the USDA filed a Notice with the MSPB that it was withdrawing Charge 1 ("Conduct Prejudicial to the Best Interest of the Service"), and stating that it "would have imposed the penalty of removal based solely on Charge 2." (*Id.* at 330; *see also* Am. Compl. at 23.) Administrative Judge Mark Syska presided over the MSPB appeal. (CAR at 338; Am. Compl. at 23.) Judge Syska issued a Close of Record Order on September 21, 2016, providing Justis a "final opportunity to present evidence and argument in support of his appeal," and directing him

to focus on Charge 2 (AWOL charge) as the USDA had dropped Charge 1.  (CAR at 338.)  In response, Justis raised for the first time in his appeal that the USDA was "prejudiced against [him]" and "labeled [him] a troublemaker" because he filed two "workforce violence complaints" and an EEO complaint "for defending [his] rights as a U.S. citizen and a single parent."[4]  (Am. Compl. at 40-41; CAR at 351.)  On October 13, 2016, Judge Syska issued a Supplemental Close of Record Order, apparently in response to Justis's response to his Close of Record Order, wherein Justis "belatedly raised certain affirmative defenses to his removal . . . including retaliation for prior EEO activity."  (CAR at 354.)  In the Supplemental Close of Record Order, Judge Syska provided Justis with the legal standards on employment discrimination, including retaliation, and provided him additional time to "file evidence and argument" in support of these affirmative defenses.  (*Id*. at 354-57.)

In response to the Supplemental Close of Record Order, Justis stated that his removal was impermissibly based on his arrest and that it also constituted retaliation for filing the informal EEO complaint.  (CAR at 365-377; *see also* Am. Compl. at 35-41.)  Justis also alleged that an August 20, 2015 "Letter of Caution" from Dr. Holiat constituted retaliation for his prior EEO activity.  (CAR at 365-367, 371.)  In the Letter of Caution, Dr. Holiat notified Justis that sick leave requests without medical substantiation did not comply with Justis's current leave restrictions.  (*Id*.)  Justis also appeared to assert a hostile work environment claim (for harassment and bullying) in connection with how his supervisor, Dr. Rivera-Garcia, handled his altercation with Inspector Gutierrez.  (*Id*. at 373.)

---

[4]  The Certified Administrative Record reflects that Justis also filed an informal EEO complaint in August of 2012, alleging harassment.  Justis does not allege in his Amended Complaint that the USDA retaliated or discriminated against him for filing the 2012 EEO complaint.  (CAR at 422; *see also* Am. Compl. at 19.)

On January 10, 2017, the MSPB issued its "Initial Decision," authored by Judge Syska, affirming the USDA's removal decision. (CAR at 535-552; *see also* ECF 1 at 32-48.) The MSPB found that USDA's decision to remove Justis based on the AWOL charge was supported by a preponderance of the evidence. (CAR at 538-40.)[5] Judge Syska stated that "to prove an AWOL charge, an agency must demonstrate that the employee was absent without authorization and, if the employee requested leave, that the request was properly denied." (*Id.* at 539 (citing *Savage v. Dep't of Army*, No. AT-0752-11-0634-I-2, 2015 WL 5158744 (M.S.P.B. Sept. 3, 2015), *overruled on other grounds by Pridgen v. Off. of Mgmt. & Budget*, No. DC-0432-14-0557-I-1, 2022 WL 4138183 (M.S.P.B. Sept. 12, 2022)).) In affirming the USDA's decision to remove Justis, the MSPB relied on the August 28, 2015 email from Thomas Urban, USDA FSIS Frontline Supervisor, describing his interactions with Justis's sister, including that she advised Urban that Justis had been arrested and placed in federal detention on August 21, 2015 and would not be returning to work. (*Id.* at 539-40) The MSPB also relied on the USDA's proposed removal and removal decisions, which stated that Justis "had not contacted his supervisor regarding his absence, . . . did not request or receive authorization to be away from his duties[,] and had been carried in an AWOL status since August 21, 2015." (*Id.* at 540.) Finally, the MSPB relied on Justis's time sheets, which showed that as of October 17, 2015, Justis had "accumulated more than 320 hours of AWOL." (*Id.*)

In affirming the USDA's removal decision, the MSPB rejected Justis's argument that because Justis left a voicemail with Dr. Holiat, the USDA was aware of his whereabouts, noting

---

[5]    The MSPB also denied the USDA's motion to dismiss the MSPB appeal as moot, concluding that although Justis "has not been ready, willing, and able to work, and would not be entitled to backpay due to his incarceration since August 21, 2015," he nevertheless might be entitled to some relief from the appeal, such as "purging the removal" from his personnel file. (CAR at 537-38.)

that it does not counter evidence that Justis was absent without authorization. (*Id.* (observing the absence of evidence in the record that Justis requested leave and that the USDA approved any leave after his incarceration).) The MSPB also rejected Justis's argument that "Charge 1 and Charge 2 go hand in hand," and that the USDA impermissibly made its decision based on a criminal complaint rather than a conviction, concluding that it is undermined by the evidence in the record that Justis was absent for 32 consecutive days without authorization. (*Id.*)

The MSPB also concluded that Justis failed to meet his burden in proving his affirmative defenses, which included retaliation for prior protected activity (EEO and whistleblowing) and harmful procedural error.[6] (*Id.* at 541-49.) The MSPB construed Justis's EEO retaliation claim as stemming from the altercation he had with food inspector Liliana Gutierrez on April 22, 2015. (*Id.* at 542.) The MSPB concluded that Justis failed to meet his burden of proving that his EEO activity (filing an informal EEO complaint) was a factor in his removal, stating specifically that Justis "has not provided evidence to demonstrate discrimination or retaliation." (*Id.* at 544.) Relevant to this conclusion was the lack of evidence showing that the individuals involved in

---

[6] In his Amended Complaint and his Petition for Review filed in the Federal Circuit, Justis did not challenge the MSPB's conclusions rejecting his whistleblowing retaliation and harmful procedural error affirmative defenses. Although Justis mentions these affirmative defenses in his Response to the United States Motion, he does not address the defenses substantively. Because Justis has either waived or forfeited these arguments on appeal, the Court need not address them. *See Jacobs v. Mayorkas*, No. 21-0165, 2021 WL 1979436, at *1 (E.D. Pa. May 18, 2021) ("Plaintiff waives this claim by failing to respond to Defendant's arguments that it is untimely and unexhausted."); *see also Celestial Cmty. Dev. Corp. v. City of Phila.*, 901 F. Supp. 2d 566, 578 (E.D. Pa. 2012) ("To put it simply: plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested."); *Cook v. W. Homestead Police Dep't*, No. 16-1292, 2017 WL 1550190, at *3 (W.D. Pa. May 1, 2017) ("Plaintiffs' failure to respond at all to [Defendants] arguments for dismissal . . . will be read as a concession of those arguments, if not a waiver of those issues."). Even if Justis had addressed the affirmative defenses on the merits, there is nothing in the administrative record that supports these defenses, and thus the MSPB did not abuse its discretion in rejecting them.

Justis's removal were even aware that Justis filed an informal EEO complaint.  (*Id*. at 545.)  In addition, the MSPB concluded that "the record fully supports the [USDA's] stated reason for its action as the record shows that [Justis] was AWOL for 320 hours."  (*Id*.)

Justis then petitioned the MSPB Board for review of the initial decision.  (CAR at 505.) On January 23, 2023, the MSPB denied the petition for review and affirmed and adopted Judge Syska's initial decision, which in turn rendered Judge Syska's initial decision the MSPB's final decision.  *See* 5 C.F.R. § 1201.113(b).  Justis then filed a petition with the United States Court of Appeals for Federal Circuit.  On October 24, 2023, the Federal Circuit issued an order transferring the case to this Court.  (*See* ECF No. 1 at 2.)  The Federal Circuit reasoned that it lacked jurisdiction because Justis presented a "mixed case" involving both an appeal of an MSPB decision and allegations of discrimination.[7]  (*Id*.); *see also Justis v. Dep't of Agric*., No. 2023-1531, 2023 WL 7012662, at *1 (Fed. Cir. Oct. 25, 2023) (*per curiam*).

This Court granted Justis leave to proceed *in forma pauperis*, directed that his petition for review be filed as a Complaint, and directed that the Complaint be served on the USDA.  (*See* ECF No. 3.)  After service was effectuated, Justis filed an Amended Complaint.  The first five pages of Justis's Amended Complaint consists of the Court's standard form complaint for employment discrimination cases.  (Am. Compl. at 15.)  Justis checks the box indicating that he asserts a claim under Title VII.  (Am. Compl. at 1.)  He alleges discriminatory conduct in the form of

---

[7]  "When an employee complains of a personnel action serious enough to appeal to the MSPB and alleges that the action was based on discrimination, she is said (by pertinent regulation) to have brought a 'mixed case.'"  *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012) (quoting 29 C.F.R. § 1614.302)).  "Mixed cases are properly appealed from the MSPB by filing a complaint in a district court."  *Strickland v. Wilkie*, 105 F.4th 285, 291 (5th Cir. 2024) (citing Kloeckner, 568 U.S. at 50).  "The district court then decides both the issues of the MSPB's alleged errors and the plaintiff's discrimination claims, with the latter receiving *de novo* review."  *Id*. (citing *Kloeckner*, 568 U.S. at 55 n.4).

"[t]ermination of my employment," "[f]ailure to stop harassment," "[u]nequal terms and conditions of my employment," and "[r]etaliation." (*Id*. at 2-3.) He also alleges that the discrimination began on April 23, 2015. (*Id*. at 3.) In the section of the form directing Justis to state the basis of discrimination, or in other words, his alleged protected class, Justis left the section blank. (*Id*.) Further, in the section directing Justis to state the facts of his case, he responds "see attached." (*Id*.) Attached to the Amended Complaint is Justis's Petition for Review to the Federal Circuit, as well as other select pleadings from the Certified Administrative Record. (*Id*. at 10-47.)

The United States now moves to dismiss Justis's Amended Complaint, or in the alternative, for summary judgment on the Certified Administrative Record. (Mot. Dismiss, ECF Nos. 19, 20) Justis filed a Response (Justis Resp., ECF No. 22), to which The United States filed a reply (Reply, ECF No. 23). After briefing concluded, the Court granted Justis's request for the appointment of an attorney and place his case on the Court's Attorney Panel for *pro se* plaintiffs in employment cases. (ECF No. 24.) After no attorney volunteered to accept appointment to represent him, Justis's case was removed from the Employment Panel. (ECF No. 25.) The United States's Motion is now ripe for disposition.

## II.    STANDARD OF REVIEW

Because this is a "mixed case"—including both an appeal of a MSPB decision and Title VII discrimination claims—different standards apply to the different claims. Title VII Discrimination claims are reviewed *de novo*. *Strickland*, 105 F.4th at 291; *Makky v. Chertoff*, 489 F. Supp. 2d 421, 428 (D.N.J. 2007), *aff'd*, 541 F.3d 205 (3d Cir. 2008). Claims that were before the MSPB are reviewed on the administrative record using an abuse of discretion standard. *Makky*, 489 F. Supp. 2d at 428.

### A.    Motion to Dismiss

The United States moves to dismiss Justis's Title VII claims under Rule 12(b)(6), which provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  "A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555.)  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  It is the defendants' burden to show that a complaint fails to state a claim.  *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff,

and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

### B.    Review of MSPB Decisions

The United States also requests the Court to uphold the MSPB's decision, which affirmed the USDA's removal of Justis.[8]  In considering Justis's appeal of the MSPB's decision, the Court is required to review his claims on the administrative record.  *See* 5 U.S.C. § 7703(c); *see also Makky*, 489 F. Supp. 2d at 428.  Thus, the Court must review the record and "set aside an agency decision, findings, or conclusions of law found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.  5 U.S.C. § 7703(c); *see also Strickland*, 105 F.4th at 291; *Crowe*, 74 F.4th at 1037; *Makky*, 489 F. Supp. 2d at 428.  "A determination is not clearly arbitrary and capricious if the MSPB 'has reasonably considered the relevant issues and reasonably explained the decision.'"  *Strickland*, 105 F.4th at 291 (quoting *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)).  The plaintiff has the burden of demonstrating errors in the MSPB's decision.  *Hawkins v. Soc. Sec. Admin.*, 368 F. App'x 136, 139 (Fed. Cir. 2010) (citing *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467

---

[8]  The United States alternatively requests that the Court dismiss the MSPB appeal under Rule 12(b)(6), contending that the appeal is "legally deficient." (Mem. Dismiss 6.)  Although it is not clear, the Court understands the United States to seek dismissal of the MSPB appeal under Rule 12(b)(6) because Justis did not meet his burden in specifically identifying errors in the MSPB's decision, and thus waived any right to challenge the decision.  The Court need not consider whether or not Justis adequately identified alleged errors in the MSPB's decision because it is clear from the administrative record that substantial evidence supports the MSPB's decision.

(Fed. Cir. 1998)). "Conclusions of fact in agency adjudications are governed by the substantial evidence test." *New-Howard v. Shinseki*, No. 09-5350, 2012 WL 2362546, at *14 (E.D. Pa. June 21, 2012) (citing *Campbell v. Merit Sys. Protection Bd.*, 27 F.3d 1560, 1564 (Fed. Cir. 1994)). The substantial evidence test "requires courts to defer as long as the record contains evidence from which one reasonably could draw the challenged inference – even though there is other evidence which, if believed, would permit the contrary inference." *Id.*

Although the United States seeks summary judgment on Justis's claim relating to the appeal of the MSPB's decision, the Court does not apply the Federal Rule of Civil Procedure 56 standard to review an administrative agency's final decision. *See Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985); *see also Dorley v. Cardinale*, 119 F. Supp. 3d 345, 351 (E.D. Pa. 2015) (describing that "district [court] sits as an appellate tribunal" in reviewing administrative decisions, so even when mechanism of summary judgment is proper, "usual summary judgment standard does not apply").

## III.     DISCUSSION

### A.     Title VII Discrimination Claims

The United States moves to dismiss Justis's Title VII claims on two grounds:  (1) he failed to exhaust administrative remedies prior to asserting the claims in this court; and (2) he fails to allege the necessary elements for a claim under Title VII.

#### 1.     Exhaustion

Whether pursuing federal statutory discrimination claims or challenging a MSPB decision, a federal employee must first exhaust administrative remedies before pursing relief in the federal courts. *See Crowe*, 74 F.4th at 1024-25 (discussing exhaustion requirements in mixed case appeals and stating that although federal employees pursuing mixed case appeals have "some options in

terms of the administrative process they wish to pursue, they must exhaust one of the available processes before filing a case in federal court"); *see also Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997) ("It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief."). In mixed cases, federal employees "must initiate the administrative process in either his agency's EEO office or the MSPB – but he cannot litigate the mixed case in both." *Id*. at 1024 (citing 29 C.F.R. § 1614.302(b)).

The Court understands Justis to assert Title VII claims not only based on his removal from the USDA, but also based on pre-removal conduct by the USDA. Specially, pre-removal claims include hostile work environment claims in connection with Justis's altercation with Inspector Gutierrez and his confrontation with Dr. Rivera Garcia. He also appears to assert pre-removal retaliation claims based on front-line supervisor L. Lilyestrom reassigning him to a different poultry plant and requesting disciplinary action against him on the same day that he filed the EEO complaint. The United States contends that Justis has not exhausted his Title VII claims because he failed to specifically raise discrimination prohibited by Title VII in any pleading before the MSPB. Although the Court agrees with the United States that Justis failed to exhaust his discrimination claims, the Court must consider two separate categories of Justis's discrimination claims: those that relate specifically to his removal and those that relate to pre-removal conduct.

Under the Civil Service Reform Act ("CSRA"), which governs the procedures by which federal employees can challenge personnel actions, only "particularly serious" adverse employment actions may be appealed to the MSPB. *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012); *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012); 5 U.S.C. §§ 7512. These "particularly serious" actions include: "(1) a removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of 30 days or less." 5 U.S.C. § 7512; *Kloeckner*, 568

U.S. at 44. "It is clear from the statute that in the absence of one of the five qualifying 'particularly serious' adverse actions, the MSPB lacks jurisdiction." *Crowe*, 74 F.4th at 1025; *see also Kloeckner*, 568 U.S. at 44 (explaining that the MSPB has jurisdiction "[i]f (but only if)" the employment action is one of the statutorily prescribed "particularly serious" actions). So, to the extent that Justis seeks to raise Title VII claims in connection with his removal—a particularly serious adverse action within the MSPB's jurisdiction—he was required to first exhaust those claims with the MSPB. 5 U.S.C. § 7512; *Kloeckner*, 568 U.S. at 44; *Crowe*, 74 F.4th at 1034 ("Having chosen to challenge his termination in a mixed case appeal before the MSPB, Crowe was required to raise before that body all theories of discrimination that he believed applied to that appealable personnel decision.").

Justis alleged to the MSPB that his removal constituted retaliation for filing an informal EEO complaint. However, absent from Justis's papers before the MSPB—even despite Judge Syska's request for all evidence and argument to support allegations of discrimination and retaliation—is any allegation from Justis of Title VII discrimination or that his EEO complaint was in any way related to his membership in a Title VII-protected class. Title VII prohibits an employer from retaliating against an employee for opposing any act made unlawful by Title VII, or because he made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C. § 2000e-3; *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015). To state a plausible retaliation claim under Title VII, the plaintiff must allege facts to show: (1) that he engaged in a protected employment activity; (2) that the employer took an adverse employment action against him; and (3) a causal link between the protected activity and the adverse employment action. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). To constitute a protected activity, the EEO complaint would have to have alleged a violation of

14

Title VII's substantive anti-discrimination provisions, meaning that it involved discrimination based on rase, color, religion, sex, or national origin. *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006).

The alleged protected activity at issue here—Justis's filing the informal EEO Complaint in 2015—related to a workplace safety altercation between Justis and Inspector Gutierrez and how his supervisor, Rivera-Garcia responded to the workplace complaint. (*See* Am. Compl. at 12-13.) It did not relate to discrimination on the basis of a protected class or other conduct made illegal under Title VII. Although Justis cannot be faulted for failing to specifically cite to Title VII in his pleadings before the MSPB, he was nevertheless required to provide "a sufficient factual basis for the MSPB to pursue an investigation regarding that particular [Title VII] claim." *Mount v. Dep't of Homeland Sec.*, 937 F.3d 37, 48 (1st Cir. 2019). Justis failed to provide any factual basis for a Title VII discrimination claim for the MSPB's investigation. Accordingly, Justis did not exhaust before the MSPB a Title VII discrimination or retaliation claim in connection with his removal. *See id.; Crowe*, 74 F.4th at 1034 (concluding that any Title VII theories based on race and sex discrimination were not properly exhausted because they were not raised before the MSPB); *Munene v. Mayorkas*, No. 19-220, 2023 WL 6127739, at *5 (D. Ariz. Sept. 19, 2023) ("There is no indication in the record that Plaintiff alleged in [his] MSPB appeal . . . that discrimination prohibited by Title VII was a basis for his 2012 suspension. Accordingly, there is no indication that Plaintiff exhausted a Title VII claim arising from the 2012 suspension."). Nor can Justis argue that he exhausted those claims through the EEO process as he never filed a formal complaint after receiving a notice of right to file. *See* 29 C.F.R. § 1614.106(b) (noting that to exhaust claims under Title VII, a plaintiff must file a formal complaint within 15 days of receiving a right to file a formal

15

complaint).  Accordingly, any Title VII claim that Justis asserts in connection with his removal is not exhausted and must be dismissed.

As noted above, the Court understands Justis to also assert Title VII claims that are unrelated to his removal from the USDA.  However, the MSPB did not have jurisdiction to consider any of Justis's pre-removal discrimination claims—i.e., the alleged hostile environment caused by the altercations with Inspector Gutierrez and Dr. Rivera Garcia, and his reassignment to a different poultry plant and receipt of disciplinary action after filing an informal EEO complaint— as they were not based on his removal or any other particularly serious employment action.  5 U.S.C. § 7512; *Crowe*, 74 F.4th at 1025-27.  Thus, it cannot be said that Justis failed to exhaust his administrative remedies on these pre-removal claims before the MSPB simply because he did not raise them before the MSPB.  *Id*. at 1027 (concluding that "neither the text nor structure of the CSRA supports the theory that if the MSPB has jurisdiction over a mixed case, it then has pendent jurisdiction to decide factually related claims of discrimination associated with personnel actions outside the list of 'particularly serious' actions set forth in 5 U.S.C. § 7512.  Such discrimination claims must instead be exhausted through the EEO process"); *see also Lethridge v. United States Postal Service*, 99 M.S.P.R. 675 (M.S.P.B. 2005) (concluding that the MSPB lacked jurisdiction over pre-termination disability claims (such as failure to accommodate) as they were based on "non-appealable actions").

Having determined that Justis was not required to exhaust his pre-removal claims before the MSPB, the Court next considers whether he properly exhausted them through the EEO process. Justis alleges that he filed an informal EEO complaint on April 25, 2015 related to his altercation with Inspector Gutierrez.  To exhaust claims under Title VII, Justis was required to file a formal complaint within 15 days of receiving a right to file a formal complaint.  *See* 29 C.F.R. §

1614.106(b).   Justis does not allege (nor is there any evidence in the administrative record showing) that he filed a formal complaint with the EEO after receiving a notice of right to file a formal complaint.   Therefore, even assuming Justis's EEO complaint embraced all of the pre-removal claims Justis raised, it is clear he did not exhaust his pre-removal claims through the EEO process.   *See Donovan v. Henderson*, 45 F. App'x 178, 179 (3d Cir. 2002) (holding that "failure to comply with the 15-day window for filing a formal complaint after notice of a right to file a formal charge is received . . . is grounds for dismissal of a tardy complaint, and constitutes a failure to exhaust"); *Green v. Postmaster Gen. of U.S.*, 437 F. App'x 174, 177-78 (3d Cir. 2011) (affirming dismissal of Title VII claims where the plaintiff filed the "pre-complaint" but failed to timely file a formal complaint and therefore failed to exhaust remedies); *Slingland v. Donahoe*, 542 F. App'x 189, 191 (3d Cir. 2013) ("Failure to exhaust administrative remedies is an affirmative defense . . . [and] is grounds for dismissal on a Rule 12(b)(6) motion.").   Accordingly, Justis's pre-removal discrimination claims are also not properly exhausted and must be dismissed.

### 2.    Merits

Even if Justis had exhausted his Title VII claims, they must nevertheless be dismissed as lacking merit.   As noted above, any retaliation claim that Justis intends to assert must necessarily fail because he has not alleged a protected activity, meaning "opposition [] to discrimination based on a protected category, such as age or race."   *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015).   His informal EEO complaint related to a workplace safety incident that occurred with colleagues.   It did not relate to any activity protected by Title VII.   "Filing grievances unrelated to discrimination does not . . . constitute protected activity for purposes of a Title VII retaliation claim."   *Paradisis v. Englewood Hosp. Med. Ctr.*, 680 F. App'x 131, 138 (3d Cir. 2017) (*per curiam*); *see also Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d

130, 135 (3d Cir. 2006) ("A general complaint of unfair treatment is insufficient to establish protected activity under Title VII.").  In discussing his retaliation claim, Justis states only that his employer "labeled him a troublemaker" because he filed workforce complaints "for defending [his] rights as a U.S. citizen and a single parent." (Am. Compl. at 40-41; CAR at 351.)  Being a troublemaker, a U.S. citizen, or a single parent does not render Justis a member of a protected class.  During the appeal process, the MSPB provided Justis with the law on employment discrimination, including the law on retaliation claims, under federal law.  (CAR at 354-57.)  Despite this, Justis never alleged that he opposed an employment practice made illegal by Title VII.  Accordingly, Justis's retaliation claims must be dismissed.

Justis's hostile work environment claims fail for similar reasons.  To plead a hostile work environment claim, a plaintiff must allege: (1) he suffered intentional discrimination because of membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present.  *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020) (alterations, internal quotations, and citations omitted); *Felder v. Penn Mfg. Indus., Inc*., 303 F.R.D. 241, 243 (E.D. Pa. 2014).  Justis has not alleged membership in a protected class.  Moreover, Gutierrez's actions of placing her knife in such a way as to risk harm to Justis and Rivera-Garcia's actions pointing and yelling at Justis do not raise an inference of intentional discrimination let alone rise to the level of severe and pervasive.  Accordingly, Justis's hostile work environment claims under Title VII also fail.

### B.    MSPB Appeal

The United States also asks the Court to uphold the MSPB's decision affirming the USDA's removal of Justis.  The United States argues that substantial evidence in the administrative record supports the basis for Justis's removal—that he was AWOL for more than 320 hours—and that the MSPB's decision was not arbitrary or capricious.  (ECF No. 19 at 6.)  The United States also argues that that Justis failed to provide evidence to support the stated affirmative defenses of discrimination or retaliation.  In response to the Motion to Dismiss, Justis does not appear to factually contest that he was AWOL.  Instead, he contends that he was removed in retaliation for a prior EEO complaint and that removal as a penalty was too harsh.  On that later point, Justis argues that the USDA should have indefinitely suspended him pending his conviction and imprisonment instead of terminating him.  (ECF No. 22 at 4.)

As noted above, the Court should uphold MSPB decisions "unless they are clearly arbitrary and capricious, unsupported by substantial evidence or otherwise not in accordance with law." *Strickland*, 105 F.4th at 291.  Before the MSPB will sustain a federal agency's decision to remove or discharge an employee, the agency "must establish by preponderant evidence that (1) the charged conduct occurred; (2) there is a 'relationship between the misconduct and the objective of promoting the efficiency of the service'; and (3) the penalty imposed is reasonable."  *Randall v. Dep't of Def.*, 652 F. App'x 929, 930 (Fed. Cir. 2016) (*per curiam*) (quoting *James v. Dale*, 355 F.3d 1375, 1378 (Fed. Cir. 2004)); (*see also* CAR 538-552.)  Justis challenges the first and third prongs.[9]  He does not appear to challenge the MSPB's finding that the USDA adequately

---

[9]    As noted above, Justis does not address the MSPB's findings on the charged conduct (AWOL) in his response to the Motion to Dismiss.  However, he did challenge these findings in his Petition for Judicial Review Pursuant to 5 U.S.C. § 7703(a)(1), which he attaches to and incorporates by reference in his Amended Complaint (*see* ECF No. 15 at 12-47).  The Court will therefore consider Justis's challenges to his AWOL classification.

established a nexus between the grounds for Justis's removal (AWOL) and his ability to accomplish his duties satisfactorily.[10]  (*See* CAR at 549 (stating that "an essential function of almost every government job is reporting to work on a regular basis").)  The Court will therefore focus on the first and third prongs.

After review of the Certified Administrative Record, the Court concludes that the MSPB correctly determined that AWOL was an appropriate charge warranting removal.  To prove an AWOL charge, the agency must establish that the employee "was absent and that either the absence was not authorized or that a request for leave was properly denied."  *Frazier v. Sec'y*, 626 F. Supp. 2d 618, 626 (E.D. La. 2009) (citing *Cooke v. U.S. Postal Service*, 67 M.S.P.R. 401, 404 (M.S.P.B. 1995)), *aff'd sub nom. Frazier v. Chertoff*, 372 F. App'x 474 (5th Cir. 2010).

Based on the record before it, the MSPB correctly found that Justis had been absent from work for more than 320 hours (or 32 consecutive days) by the time he was issued a notice of proposed removal on October 27, 2015.  This was based on substantial evidence in the record, including Justis's time sheets, the August 28, 2015 email from Thomas Urban revealing Justis's sister's statements about Justis's incarceration and that he would not be returning to work, and the USDA's proposed removal and removal decisions, which stated that Justis "had not contacted his supervisor regarding his absence, . . .  did not request or receive authorization to be away from his duties[,] and had been carried in an AWOL status since August 21, 2015."  (CAR at 540.) Substantial evidence in the record also supports that Justis's absence was not authorized.  At the time, Justis had been on leave restriction as a result of a "negative pattern" of using sick and annual leave.  (*Id*. at 225-27.)  The leave restriction required Justis to pre-request sick leave and

---

[10]  Because the USDA rescinded Charge 1 ("conduct prejudicial to the best interest of the service"), the MSPB focused it's analysis on Charge 2 (AWOL).

substantiate each leave with a medical certification. (*Id*. at 229.) After being detained, Justis called his supervisor and left a voicemail explaining "everything in full detail." (Am. Compl. at 15.) The USDA concluded that the voicemail did not constitute a request for leave. (CAR at 409.) There is no other evidence in the record establishing that Justis requested or was authorized sick leave, annual leave, or leave without pay, for the 32 consecutive days he was absent prior to his removal.

The MSPB also correctly concluded that Justis failed to present any evidence of an affirmative defense – that his removal was due to discrimination or retaliation. The MSPB construed Justis's affirmative defense as stemming from the altercation he had with food inspector Liliana Gutierrez on April 22, 2015. The MSPB concluded that Justis failed to meet his burden of proving that his alleged EEO activity (filing an informal EEO complaint) was a factor in his removal, stating specifically that Justis "has not provided evidence to demonstrate discrimination or retaliation." (*Id*. at 544.) Relevant to the MSPB's conclusion was the lack of evidence showing that the individuals involved in Justis's removal were even aware that Justis filed an informal EEO complaint. (*Id*. at 545.) The MSPB further concluded that "the record fully supports the [USDA's] stated reason for its action as the record shows that [Justis] was AWOL for 320 hours." (*Id*.) Justis does not point to any defects in the MSPB's conclusion in his Amended Complaint, his Petition for Review, or in his Response to the Motion to Dismiss.

Finally, the MSPB correctly concluded that removal was an appropriate penalty for Justis's AWOL. Justis contends that the USDA should have indefinitely suspended him pending his conviction and imprisonment instead of terminating him. (ECF No. 22 at 4.) To determine whether a penalty is reasonable in relation to the misconduct that occurred, the MSPB uses the *Douglas* factors. *See U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 5 (2001) (citing *Douglas v.*

*Veterans Admin.*, 5 MSPB 313, 333-334 (1981)).  The *Douglas* factors "are a non-exhaustive set of considerations that the Board must independently assess when relevant to determine whether a penalty was reasonable."  *Purifoy v. Dep't of Veterans Affs.*, 838 F.3d 1367, 1371 (Fed. Cir. 2016).[11]  The MSPB considered the USDA's assessment of *Douglas* factors in affirming the USDA's conclusion that removal was appropriate.  (CAR at 550-52.)  The MSPB also considered and rejected Justis's argument that the USDA impermissibly made its decision based on a criminal complaint rather than a conviction, concluding that it is undermined by the evidence in the record that Justis absent for 32 consecutive days without authorization.  (*Id.*)  The MSPB's conclusion

---

[11]  These factors include:

> (1) The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;
> (2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;
> (3) the employee's past disciplinary record;
> (4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;
> (5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties;
> (6) consistency of the penalty with those imposed upon other employees for the same or similar offenses;
> (7) consistency of the penalty with any applicable agency table of penalties;
> (8) the notoriety of the offense or its impact upon the reputation of the agency;
> (9) the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;
> (10) potential for the employee's rehabilitation;
> (11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and
> (12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

*Douglas*, 5 M.S.P.R. at 305-06.

was not arbitrary or capricious. Indeed, removal from federal employment is an appropriate penalty for AWOL since "[a]n essential element of employment is to be on the job when one is expected to be there." *Washington v. Dep't of Army*, 813 F.2d 390, 394 (Fed. Cir. 1987) (citation omitted). The penalty is also appropriate when an arrest or incarceration is the cause of the AWOL. *See, e.g.*, *Gibbs v. Dep't of Navy*, 837 F.2d 1097, at \*1 (Fed. Cir. 1987) (*per curiam*) (affirming MSPB decision to sustain agency termination of incarcerated employee resulting in AWOL); *Larry v. U.S. Postal Serv.*, 194 F.3d 1338, at \*3-4 (Fed. Cir. 1999) (affirming removal based on AWOL and unacceptable conduct, due to arrest and incarceration); *Frazier*, 626 F. Supp. 2d at 627 (affirming MSPB decision to uphold agency removal of DHS employee based on AWOL after one month of incarceration).

After reviewing parties' arguments and the entire administrative record, the Court concludes that substantial evidence in the administrative record supports the MSPB's affirmance of the USDA's removal of Justis on the basis of AWOL and that the MSPB's decision was not arbitrary or capricious. Accordingly, the MSPB did not abuse its discretion in sustaining the USDA's removal of Justis on the basis that he was AWOL. The Court therefore will affirm the decision of the MSPB.

## IV.    CONCLUSION

For the foregoing reasons, the United States' Motion to Dismiss, or in the Alternative, for Summary Judgment, will be granted, Justis's Amended Complaint will be dismissed with prejudice, and the MSPB's January 23, 2023 decision will be affirmed. As Justis has been given many opportunities to allege his claims—both through the administrative process and in his appeals and complaints—the Court concludes that granting Justis leave to amend would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019)

(concluding amendment by *pro se* litigant would be futile because litigant "already had two chances to tell his story").

An appropriate order follows.

BY THE COURT:

/s/ Joel H. Slomsky
**JOEL H. SLOMSKY, J.**